IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RUTH MCQUADE,
          Plaintiff,

vs.                                        Case No.  3:04cv170/RV/MD

STATE OF FLORIDA, et al.,
          Defendants.

_____

## REPORT AND RECOMMENDATION

This action, wherein plaintiff is asserting claims under the Civil Rights Act, 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C. § 2201, concerns the Florida Mental Health Act a/k/a the Baker Act, Fla. Stat. §§ 394.451-.4789 (hereinafter "Baker Act") and its application to plaintiff on two separate occasions.  (Doc. 25). Pending before the court are two motions to dismiss, one motion for summary judgment, and one answer seeking dismissal of the fifth amended complaint. (Docs. 35, 48, 50 & 55, respectively).  Upon review of the pleadings and attachments before the court, the undersigned concludes that the motions should be granted.

## BACKGROUND

Liberally construing plaintiff's fifth amended complaint (doc. 25), it appears plaintiff is claiming that the Baker Act is unconstitutional on its face and as applied to her.  Specifically, she maintains that Florida Statutes § 394.4625 ("Voluntary Admissions"), § 394.463 ("Involuntary Examination"), § 394.467 ("Involuntary Placement"), and § 394.4655 ("Involuntary Outpatient Placement") violate due process, abridge the privileges and immunities of citizens of the United States, deny plaintiff equal protection of the laws and remove plaintiff's privilege to be free from

unreasonable searches and seizures. (Doc. 25 ¶53). Plaintiff further contends that the statutory sections at issue were unconstitutionally applied to her on two separate occasions when she was taken into custody and delivered to a facility for an involuntarily examination. Specifically, plaintiff states that on May 8, 2002 she was detained, questioned, and cuffed by defendant Deputy Suddeth at 4317 N. Palafox Street in Pensacola, Florida. Deputy Suddeth also removed plaintiff's pocketbook. Plaintiff was then transported by Deputy Suddeth to the Lakeview Center, Inc. in Pensacola, Florida, where plaintiff was "locked up" by Deputy Suddeth. While at Lakeview, plaintiff's belongings were "searched and seized" by that facility. Plaintiff remained at Lakeview until May 10, 2002. (*Id.*, pp. 3-4, 6). Plaintiff further alleges that on July 29, 2002 she was detained, questioned and cuffed by defendant Park Ranger Hughes and "two or three other unnamed officers." Plaintiff's pocketbook was removed and searched by either Park Ranger Hughes or one of the other officers. Plaintiff was then transported by Park Ranger Hughes to an emergency room at a hospital in Gulf Breeze, Florida, where Park Ranger Hughes "forced" plaintiff to have a medical examination and a blood test. Plaintiff was then "locked up" by Park Ranger Hughes at either the hospital or Lakeview Center (plaintiff's allegations are unclear in this regard). While at the "locked facility," plaintiff's belongings were "searched and seized" by that facility. Plaintiff remained at the facility until August 1, 2002. (*Id.*, pp. 4-6). Plaintiff asserts that each of the foregoing acts was "wrongful," and occurred "against the [p]laintiff's will and without the [p]laintiff breaking a law (and thus without evidence of breaking a law)." Plaintiff maintains that this conduct violated her Fourth, Fifth, Sixth and Fourteenth Amendment rights because it was done "without the plaintiff breaking a law (and thus without evidence of breaking a law)."

Plaintiff names the following defendants in this action: "the State of Florida; Jeb Bush, individual, while operating as Governor; Kathleen A. Kearney, individual, while operating as Secretary of the Department of Children and Families in 2002 (ending 8/03/2002); Jerry Regier, individual, while operating as Secretary of the Department of Children and Families in 8/03/2002-2004; Lucy D. Hadi, individual,

while operating as Secretary of the Department of Children and Families in 2005; Ron McNesby, individual and official, while operating as Sheriff for Escambia County in 2002-2005; Christina Suddeth, individual and official, while operating as Deputy for Escambia County in 2002-2005; J.R. Tomasovic, individual and official, while operating as Chief Ranger of Gulf Breeze National Seashore Federal Law Enforcement in 2002-3/2003; J. D. Lee, individual and official, while operating as Chief Ranger of Gulf Breeze National Seashore Federal Law Enforcement in 7/13/2003-2005; John Hughes, individual and official, while operating as Park Ranger of Gulf Breeze National seashore Federal Law Enforcement in 2002-11/2003." (Doc. 25, p. 1). As relief, plaintiff requests a declaratory judgment that declares Florida Statutes § 394.4625 ("Voluntary Admissions"), § 394.463 ("Involuntary Examination"), § 394.467 ("Involuntary Placement"), and § 394.4655 ("Involuntary Outpatient Placement") "null and void." (Doc. 25, p. 9). She additionally seeks monetary damages "as are reasonable and just as a direct and proximate result of the defendants' violations of [her constitutional rights]." (*Id.*). Plaintiff seeks to impose liability against the defendants because they, either in the past or presently, "supported the enforcement" of the statutes at issue and by doing so caused the violation of her constitutional rights.

## DISCUSSION

Because plaintiff is proceeding *pro se*, her pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed. *Haines v. Keener*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972); *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003).

<u>Standard for Motion to Dismiss</u>

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must take all well-pleaded facts of the complaint as true and construe them in the light most favorable to the plaintiff. *Davis v. Monroe County Bd. Of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997). However, "unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule

12(b)(6) dismissal." *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001). The complaint may be dismissed only where it appears beyond a doubt that a *pro se* litigant can prove no set of facts that would entitle her to relief. *See Leal v. Georgia Dep't of Corrections.*, 254 F.3d 1276, 1280 (11th Cir. 2001); *Brown v. Budget Rent-A-Car Systems, Inc.*, 119 F.3d 922, 923 (11th Cir. 1997).

In order to prevail in a § 1983 civil rights action, the plaintiff must allege sufficient facts to show a deprivation of a "federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). To satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, a complaint must simply give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). However, the Eleventh Circuit imposes "heightened pleading requirements" for § 1983 cases which involve individuals entitled to assert qualified immunity. *Swann v. Southern Health Partners, Inc.*, 388 F.3d 834 (11th Cir. 2004) (discussing heightened pleading standard in light of *Leatherman v. Tarrant County*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)); *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) ("In examining the factual allegations of the complaint, we must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity."), *cert. denied*, 541 U.S. 935, 124 S.Ct. 1655, 158 L.Ed.2d 355 (2004); *Harris v. Dist. Bd. of Trustees of Polk Community College*, 981 F.Supp. 1459, 1461 (M.D. Fla. 1997); *Washington v. Bauer*, No. 05-10531, 2005 WL 2114156 at *2 (11th Cir. Sept. 2, 2005) (unpublished decision) (citing *Laurie v. Alabama Court of Criminal Appeals*, 256 F.3d 1266, 1275-76 (11th Cir. 2001). In such cases, "more than mere conclusory notice pleading is required. . . . [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984); *see also Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995) (holding that complaint must "include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity").

## Qualified Immunity Standard

_____The doctrine of qualified immunity is a guarantee of fair warning.  *McElligott v. Foley,* 182 F.3d 1248, 1260 (11th Cir. 1999).  It shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct.  *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Conn v. Gabbert,* 526 U.S. 286, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *Powell v. Georgia Dep't of Human Resources*, 114 F.3d 1074 (11th Cir. 1998).  Qualified immunity seeks to ensure that individuals can reasonably anticipate when their conduct may give rise to liability, and hence, liability only attaches if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right.  *McElligott*, 182 F.3d at 1260 (citing *United States v. Lanier,* 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)).

"To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quotation and citation omitted).  "To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority."  *Harbert Intern., Inc., v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998).  "[A] court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties."  *Id.* (citation omitted).  "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  *Vineyard,* 311 F.3d at 1346 (quoting *Lee v. Ferraro*, 284 F.3d 1188,  1194 (11th Cir. 2002)).

The Supreme Court has established a two-part test for evaluating a claim of qualified immunity.  First, the trial court must determine whether a constitutional right has been violated on the facts alleged. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).  The court must assess the facts in a light most favorable to the party asserting the injury. *Id*.  Second, if a violation has been established, the court must determine whether the right was "clearly established." *Id*.  The very action in question need not have been held unlawful for an official to lose the protection of qualified immunity. *Hope v. Pelzer*, 122 S.Ct. at 2515; *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Officials can still be on notice that their conduct violates established law even in novel factual circumstances, and there is no requirement that previous cases be "fundamentally" or even "materially" similar. *Hope v. Pelzer*, 122 S.Ct. at 2516. Instead, the law merely must give defendants "fair warning" that their actions are unconstitutional. *Id*.  In light of pre-existing law, the unlawfulness must be apparent. *Id.*; *Creighton*, 483 U.S. at 640, 107 S.Ct. 3034.

"In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Wilson v. Strong*, 156 F.3d 1131, 1135 (11th Cir. 1998) (quoting *Jenkins v. Talladega City Bd. of Education*, 115 F.3d 821, 826 n. 4. (11th Cir. 1997)).

## Sheriff McNesby's Motion to Dismiss

The first motion to dismiss pursuant to Rule 12(b)(6) was filed by defendant Ron McNesby, who contends: (1) that the complaint fails to state a cause of action against him individually or in his official capacity as Sheriff of Escambia County, Florida; and (2) that to the extent plaintiff attempts to state a cause of action against him individually, he is entitled to qualified immunity. (Doc. 35).  Specifically, Sheriff McNesby asserts that plaintiff's allegations that he supported the enforcement of statutes created by the State of Florida fails to assert a legal theory that is cognizable as a matter of law and fails to allege sufficient facts to support a claim of any nature against him. (*Id.*, pp. 3-4).  Sheriff McNesby further contends that

plaintiff's complaint fails to state a cause of action against him either individually or in his official capacity for violation of plaintiff's constitutional rights because it fails to allege any personal involvement by Sheriff McNesby or that he caused a custom or policy which led to an alleged deprivation of plaintiff's constitutional rights.  (*Id.*, pp. 4-6).  Finally, Sheriff McNesby contends that to the extent he is sued in his individual capacity, he is entitled to qualified immunity because supporting the enforcement of Florida's statutes does not violate clearly established statutory or constitutional rights.  (*Id.*, pp. 6-7).

Plaintiff has responded in opposition to the motion.  (Doc. 57).  Although vague and very difficult to decipher, she appears to argue that because defendant McNesby as Sheriff of Escambia County has policymaking authority for the Escambia County Sheriff's Office and/or Escambia County in matters of law enforcement, and is charged with enforcing the laws of the State of Florida, state laws such as the Baker Act are defendant McNesby's policies.  (Doc. 57, ¶¶29, 34-37, 84).  Put another way, according to plaintiff, when a Florida statute directs law enforcement officers to take persons into custody without evidence of them having broken a law, and a member of the Escambia County Sheriff's Office enforces that statute, *ipso facto*, the Sheriff's Office has adopted a policy of taking persons into custody without evidence of them having broken a law.

For liability under section 1983, there must be some causal connection between each defendant named and the injury allegedly sustained.  *Swint v. City of Wadley, Alabama,* 51 F.3d 988, 999 (11th Cir. 1995);  *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991).  *Respondeat superior*, without more, does not provide a basis for recovery under section 1983.  *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Cottone v. Jenne,* 326 F.3d 1352 (11th Cir. 2003); *Harris v. Ostrout,* 65 F.3d 912, 917 (11th Cir. 1995).  "The mere right to control, without any control or direction having been exercised and without any failure to supervise, is not sufficient to support 42 U.S.C. § 1983 liability."  *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 n.58, 98 S.Ct. 2018, 2037 (1979). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation

or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).   The court in *Brown* set forth the limited circumstances upon which a causal connection between the actions of a supervising official and the alleged constitutional deprivation can be shown sufficient to render him liable on a § 1983 claim.   The causal connection can be established

> when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.   The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.

*Id.* (citations omitted).

In the instant case, plaintiff's fifth amended complaint fails to identify any specific action taken by Sheriff McNesby which resulted in the deprivation of plaintiff's constitutional rights.   The fifth amended complaint fails to allege personal involvement by Sheriff McNesby in either incident involving plaintiff being taken into custody for involuntary examination.   For example, plaintiff does not allege that Sheriff McNesby personally enforced the Baker Act against her, that he knew of or was involved in the decision to take her into custody, or that he approved of Deputy Sudduth's decision to take plaintiff into custody.   Liberally construing plaintiff's allegations, they fail to suggest that Sheriff McNesby's actions or inactions had anything to do with the actions of Deputy Sudduth.   Plaintiff's repeated allegation that Sheriff McNesby "supported" the enforcement of the Baker Act from 2002 to the present, without more, is an insufficient basis for § 1983 liability.[1]   Furthermore,

---

[1] The court notes that the plaintiff's allegations of causation in this case are even more attenuated than those rejected by the Eleventh Circuit in *Dalyrmple, supra*.  In *Dalyrmple*, the plaintiffs brought a *Bivens* action against the Attorney General, alleging that she knew and intended that the officers she sent to execute a seizure warrant would commit constitutional violations at the scene.  However, the plaintiffs failed to allege any facts in support of this allegation.  The Eleventh Circuit held that the Attorney General was entitled to qualified immunity under the first part of the analysis required by *Saucier v. Katz, supra*, because the plaintiffs' allegations of a causal connection between the Attorney General's supervisory actions and the alleged constitutional violations by the agents on the scene were vague and conclusory.  *Dalyrmple*, at 996-97.  In the instant case, plaintiff does not even go so far as the plaintiffs in *Dalyrmple*.  She does not allege that Sheriff McNesby ordered, or

plaintiff cannot maintain a § 1983 cause of action against Sheriff McNesby for the alleged constitutional violations committed by Deputy Sudduth based solely on the fact that Sheriff McNesby was Deputy Sudduth's ultimate supervisor. *Monell, supra*. Based on the foregoing, plaintiff's individual capacity claims against Sheriff McNesby should be dismissed.

The court now turns to plaintiff's claims against defendant McNesby in his official capacity. When suing a local official in his official capacity under § 1983, plaintiff has the burden of showing that a deprivation of constitutional rights occurred as a result of an official government policy or custom. *See generally Monell*, 436 U.S. at 690-91, 98 S.Ct. 2018 (setting forth standards for municipal liability for acts of employees); *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005); *Glech v. Clayton County*, 335 F.3d 1326, 1329-30 (11th Cir. 2003); *Cagle v. Sutherland*, 334 F.3d 980 (11th Cir. 2003); *Griffin v. City of Opa-Locka,* 261 F.3d at 1307. "'A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. . . . A custom is a practice that is so settled and permanent that it takes on the force of law.'" *Cooper*, at 1221 (quoting *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). Plaintiff must show that a county policy or custom was the "moving force" that caused the alleged constitutional violations to establish the county's § 1983 liability. *McElligott v. Foley*, 182 F.3d 1248, 1259 (11th Cir. 1999); *Young v. City of Augusta, Georgia,* 59 F.3d 1160, 1171 (11th Cir. 1995).

In the instant case, it appears plaintiff is attempting to impose official capacity liability on Sheriff McNesby based on the following theory: because defendant McNesby has final policymaking authority for the Escambia County Sheriff's Office and/or Escambia County[2] in matters of law enforcement and is charged with

---

even knew of, plaintiff's Baker Act detention. She merely generally alleges that Sheriff McNesby supported the enforcement of the statute during his tenure.

2The Eleventh Circuit has recognized that its decisions "have not been entirely consistent on whether the relevant entity in an official-capacity suit against a sheriff in Florida is the County or the Sheriff's Department (as a unit operating autonomously from the County)." *Brown v. Neumann*, 188 F.3d 1289, 1290 n.2 (11th Cir. 1999) (comparing *Lucas v. O'Loughlin*, 831 F.2d 232, 235 (11th Cir. 1987) (County), *cert. denied*, 485 U.S. 1035, 108 S.Ct. 1595, 99 L.Ed.2d 909 (1988), with *Wright v. Sheppard*,

enforcing the laws of the State of Florida, the state law at issue here-- the Baker Act --has become the official policy of the Escambia County Sheriff's Office.  The formulation of this argument exposes its fatal flaws.  First, consider what plaintiff has not alleged.  Plaintiff has not claimed that the alleged constitutional violation was caused by a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the Sheriff's Office or Escambia County that was itself unconstitutional.  *See Monell*, 436 U.S. at 690, 98 S.Ct. at 2035-36.  Nor has plaintiff alleged that Escambia County adopted the provisions of the Baker Act as it own ordinance.  Nor has plaintiff claimed that the constitutional violation was caused by a practice "so permanent and well settled as to constitute a 'custom or usage' with the force of law" that the Sheriff's Office or Escambia County allowed to develop, which custom was itself unconstitutional.  *Id.*, 436 U.S. at 691, 98 S.Ct. at 2036.  Instead, plaintiff argues that the Sheriff's Office/Escambia County can be held liable for the deprivation of her constitutional rights because that entity has a "policy" of allowing or instructing its police officers to enforce the challenged statute. (Doc. 25, ¶ 67).[3]  As the Seventh Circuit stated in rejecting an identical argument:  "It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law.  If the language and standards from *Monell* are not to become a dead letter, such a 'policy' simply cannot be sufficient to ground liability against a municipality."  *Surplus Store & Exchange, Inc. v. City of Delphi*, 928 F.2d 788, 791-92 (7th Cir. 1991).  In *Surplus Store*, a § 1983 plaintiff attempted to make a similar "conceptual leap" from a purportedly unconstitutional state statute to a city policy by arguing that the city had a "policy" of enforcing the statute.  *Id.* at 791-92 & n.4.  The Seventh Circuit rejected that

---

919 F.2d 665, 674 (11th Cir. 1990) (implying that the Sheriff's Department would be the relevant entity)). This court need not address this point because whatever the relevant entity is, it is not liable under *Monell*.

   3Plaintiff asserts that she "cannot present a claim to bring into correction only law enforcement in reference to the defendant's Statutes, when the request for law enforcement to break the Constitution has come and/or continues to come from the State, the Governor, the Secretary . . ., and the Sheriff. . . ."  (Doc. 25, ¶67).

argument, as well as the related but slightly different argument that all cities can be charged with "adopting" as a matter of policy all state laws that they do not ignore.[4] *Id*. The *Surplus* court dismissed the plaintiff's § 1983 claims against the city based on enforcement of a state statute by a municipal police officer who was not in a policymaking position, holding that city could not be liable for enforcing an allegedly unconstitutional state statute where the municipality did not promulgate or adopt the unconstitutional statute as its own. *Cf. Doby v. DeCrescenzo*, 171 F.3d 858, 868 (3rd Cir. 1999) (commenting that "when a county is merely enforcing state law, without adopting any particular policy of its own, it cannot be held liable under the *Monell* line of cases"). This court agrees with the reasoning of the Seventh Circuit, and concludes that the plaintiff's allegations in this case are insufficient to trigger § 1983 liability against Sheriff McNesby in his official capacity. *See, e.g., Cochrane v. Harvey*, No. 4:04cv475/RH/WCS, 2005 WL 2176874 at *1 (Sept. 1, 2005) (granting summary judgment in favor of two sheriffs who were sued in their official capacities for their deputy sheriffs' seizure and delivery of plaintiff to a public mental health facility for involuntary examination under the Baker Act; "the sheriffs are not liable because the deputies' decision to seize plaintiff did not result from a custom or policy of the sheriffs, [or] from a decision of one whose acts or edicts could fairly be attributed to the sheriffs. . . .").

   In summary, even liberally construing plaintiff's fifth amended complaint, it appears beyond doubt that plaintiff cannot maintain a cause of action against Sheriff McNesby individually or in his official capacity on any legal theory cognizable under the law. Accordingly, Sheriff McNesby's motion to dismiss should be granted.

## State Defendants' Motion to Dismiss

   The second motion to dismiss pursuant to Rule 12(b)(6) was filed by defendants State of Florida, Governor Jeb Bush, Former DCF Secretary Kathleen

---

[4]As the Seventh Circuit so aptly commented: "This argument would render meaningless the entire body of precedent from the Supreme Court . . . that requires culpability on the part of a municipality and/or its policymakers before the municipality can be held liable under § 1983, and would allow municipalities to be nothing more than convenient receptacles of liability for violations caused entirely by state actors -- here, the [state] legislature." *Surplus Store*, 928 F.2d at 791 n.4.

Kearney, Former DCF Secretary Jerry Regier and DCF Secretary Lucy Hadi (hereinafter "State Defendants"), who contend: (1) that all of the official capacity claims against these defendants for damages must be dismissed based on Eleventh Amendment immunity, (2) that all of the individual capacity claims against the State Defendants for damages must be dismissed because each such defendant is entitled to qualified immunity, (3) that the complaint fails to state a claim against any of the State Defendants; and (4) that plaintiff lacks standing to assert a claim for a declaratory judgment.  (Doc. 48).  Plaintiff did not file a specific response in opposition to this motion; however, she filed a document entitled "Answer to Defendants Tomosovic and Lee and Hughes and All the Defendants[s] Motions," which the court treats as her response to the State Defendants' motion. (Doc. 60).

The court will first address plaintiff's official capacity claims against the State Defendants.  A plaintiff may not bring a § 1983 action for monetary damages against a state, state agency, or state officials in their official capacities.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45 (1989); *Miller v. King*, 384 F.3d 1248, 1259 (11th Cir. 2004); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995).[5]  Furthermore, absent waiver or express congressional abrogation, neither of which is present in this case, the Eleventh Amendment prohibits a damages suit brought by a private individual against a state in federal court.  *Federal Maritime Commission v. South Carolina State Ports Authority,* 122 S.Ct. 1864, 15 Fla.L.Wkly.Fed. S305 (2002); *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Gamble v. Florida Dep't of Heath and Rehabilitative Servs*, 779 F.2d 1509, 1511 (11th Cir. 1986).  Eleventh Amendment immunity extends also to state agents and state instrumentalities, *Regents of the University of California v. Doe*, 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997), and arms of the state as well as state officials.  *Mt. Healthy City*

---

5In *Edwards*, the Eleventh Circuit explained that "[a] state, a state agency, and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable; but a state official sued in his official capacity is a person for purposes of § 1983 when prospective relief, including injunctive relief, is sought." 49 F.3d at 1524 (citing *Will*, 491 U.S. at 71, n. 10, 109 S.Ct. at 2312, n. 10).

*Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Miller v. King*, 384 F.3d at 1260 (citing *Stevens v. Gay*, 864 F.2d 113, 114-15 (11th Cir. 1989)).  Accordingly, plaintiff's § 1983 claims for damages against the State of Florida and the State Defendants in their official capacities must be dismissed.

The State Defendants further contend that plaintiff lacks standing under either 42 U.S.C. § 1983 or 28 U.S.C. § 2201 to obtain declaratory relief concerning the statute, because plaintiff fails to allege in her fifth amended complaint any facts from which the court could reasonably conclude that she will suffer future injury from the application of the statute she challenges as unconstitutional.[6]  As a preliminary matter, it is noted that of the named State Defendants, DCF Secretary Hadi is the only appropriate party to plaintiff's declaratory judgment action.  When a plaintiff challenges the constitutionality of a rule of law, it is the state official (or agency) responsible for enforcing that rule who is the proper defendant.  *See ACLU v. The Florida Bar*, 999 F.2d 1486, 1490-91 (11th Cir. 1993); *Harris v. Bush*, 106 F.Supp.2d 1272, 1276 (N.D. Fla. 2000).  It is a long-standing rule that a plaintiff may not sue a state official who presently is without any power to enforce the complained-of statute.  *Compare Fitts v. McGhee*, 172 U.S. 516, 529-30, 19 S.Ct. 269, 274, 43 L.Ed.2d 535 (1899) (where the named state officer holds no special relation to the particular statute, and is not expressly directed to oversee its enforcement, he is not the appropriate defendant to be named in a challenge to the constitutionality of the statute), *with Gritts v. Fisher*, 224 U.S. 640, 32 S.Ct. 580, 56 L.Ed. 928 (1912) (finding that the defendant state official was charged with specific duties to enforce the challenged statute and was therefore sufficiently adverse to the plaintiffs to create an Article III controversy).

Plaintiff asserts no argument that Former Secretary Regier or Former Secretary Kearney are currently vested with executive power to enforce the laws at issue.  Accordingly, plaintiff's declaratory relief claims against these defendants must be dismissed.  The argument for plaintiff with respect to Governor Bush would

---

[6]Plaintiff seeks a declaration that Florida Statute Sections 394.4625, 294.463, 394.467 and 394.4655 are "null and void."  (Doc. 25, p. 9).

be that Article IV, § 1 of the Florida Constitution vests Governor Bush with executive power to enforce the laws.  However, this general authority, standing alone, is insufficient to make him the proper party whenever a plaintiff seeks to challenge the constitutionality of a state law.  *1st Westco Corp. v. School Dist. of Philadelphia*, 6 F.3d 108, 113 (3rd Cir. 1993); *Harris v. Bush*, 106 F.Supp.2d at 1276-77 (Governor Bush was not proper party defendant for purposes of declaratory judgment suit challenging constitutionality of the Baker Act; although governor had general obligation to enforce laws of state, Florida Department of Children and Family services was specifically charged with executive and administrative supervision over all mental health facilities, programs, and services); *Weinstein v. Edgar*, 826 F.Supp. 1165, 1165-67 (N.D. Ill. 1993); *NAACP v. California*, 511 F.Supp. 1244, 1261 (E.D. Cal. 1981); *Gras v. Stevens*, 415 F.Supp. 1148 (D.C. N.Y. 1976).  As stated so clearly in *Harris v. Bush*, "if this Court were to conclude that Governor Bush's 'general obligation to faithfully execute the laws is a sufficient connection to the enforcement of [the Baker Act], then the constitutionality of every statute enacted by the [Florida] legislature necessarily could be challenged by merely naming the Governor as a party defendant.'" *Id.*, at 1277 (quoting *Weinstein*, 826 F.Supp. at 1167) (alteration in original).  The Baker Act designates the Department of Children and Families as the "Mental Health Authority" of Florida, and charges DCF and the Agency for Health Care Administration with "executive and administrative supervision over all mental health facilities, programs, and services." Fla. Stat. Ann. § 394.457 (West Supp. 2005).  Thus, Governor Bush is not an appropriate party to plaintiff's declaratory judgment action.

Although DCF Secretary Hadi is a proper defendant to a declaratory judgment action challenging the facial constitutionality of the Baker Act, plaintiff must still establish standing.  Under Article III of the Constitution, the federal courts have jurisdiction over a claim between a plaintiff and a defendant only if it presents a "case or controversy."  This is a "bedrock requirement."  *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997).  In this way, the power granted to federal courts under Article III "is not an unconditioned authority to determine the

constitutionality of legislative or executive acts." *Valley Forge Christian College v. Americans United For Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). "A plaintiff will generally have standing where three criteria are met: (1) the plaintiff has experienced injury in fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) the plaintiff's harm is likely to be redressed should the court order relief." *Doe v. Kearney*, 329 F.3d 1286, 1292 (11th Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)). "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that [s]he will suffer injury in the future." *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1346-47 (11th Cir. 1999) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) and *Cone Corp. v. Florida Dep't of Transp.*, 921 F.2d 1190, 1205 (11th Cir. 1991)).

Consistent with the "case or controversy" requirement of Article III, the Declaratory Judgment Act, 28 U.S.C. § 2201, specifically provides that a declaratory judgment may be issued only in the case of an "actual controversy." *Malowney*, 193 F.3d at 1347. Based on the facts alleged in the complaint, "there must be a substantial continuing controversy between two adverse parties." *Id.* (citing *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985)). "The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Emory*, 756 F.2d at 1552 (internal quotations omitted); *Doe v. Kearney*, 329 F.3d 1286, 1292-93 (11th Cir.) ("the redressability requirement will usually be satisfied where there is evidence that the plaintiff is likely to encounter the same injurious conduct in the future"), *cert. denied*, 540 U.S. 947, 124 S.Ct. 389, 157 L.Ed.2d 277 (2003); *see also Lynch v. Baxley*, 744 F.2d 1452, 1456-57 (11th Cir. 1984) (recognizing that "[p]ast wrongs do constitute evidence bearing on whether there is a real and

immediate threat of repeated injury which could be averted by the issuing of an injunction"). Thus, in order for this court to have jurisdiction to issue a declaratory judgment, plaintiff must assert a reasonable expectation that the injury she has suffered will continue or will be repeated in the future. *See Emory*, 756 F.2d at 1552.

Plaintiff's claims in this case concerning Fla. Stat. § 394.4625 ("Voluntary Admissions"), § 394.467 ("Involuntary Inpatient Placement"), and § 394.4655 ("Involuntary Outpatient Placement") do not satisfy any of the three criteria for standing. Plaintiff neither claims nor alleges facts to suggest that on either occasion when she was detained and subjected to an involuntary examination, that she additionally was admitted voluntarily to a "facility,"[7] ordered to involuntary inpatient placement, or ordered to involuntary outpatient placement.[8] To the contrary, plaintiff states that on both occasions she was released within 48 hours. Accordingly, plaintiff's claims for declaratory judgment as to these statutory provisions should be dismissed for lack of standing.

Plaintiff's claim concerning Fla. Stat. § 394.463 ("Involuntary Examination") is a different matter. Plaintiff easily satisfies the first two criteria for standing. There is no question that deprivation of one's liberty effects a cognizable injury. *See Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1808-09, 60 L.Ed.2d 323 (1979) ("civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."). Furthermore, the injury in this case is clearly traceable to Florida's enactment and enforcement of § 394.463. The third criterion--redressability--presents a greater obstacle for plaintiff. The alleged injury--Florida's temporary detention and subjection of plaintiff to an involuntary examination--has already occurred and will not necessarily occur again. Nevertheless, though a close issue, the undersigned finds that the redressability

---

7The Baker Act defines a "facility" as "any hospital, community facility, public or private facility, or receiving or treatment facility providing for the evaluation, diagnosis, care, treatment, training, or hospitalization of persons who appear to have a mental illness or have been diagnosed as having a mental illness." Fla. Stat. § 394.455(10)(2002).

8In fact, Fla. Stat. § 394.4655 did not become effective until January 1, 2005. Fla. Stat. Ann. ch. 394 (West Supp. 2005).

requirement is satisfied in this case.  Plaintiff's complaint alleges that on two occasions in the two years preceding the filing of this action, her behavior prompted law enforcement officers to take her into custody and deliver her to a receiving facility for involuntary examination under the Baker Act.  Given this history, it seems reasonably likely that plaintiff could encounter future state action under Fla. Stat. § 394.463.  *See, e.g., Doe v. Kearney*, 329 F.3d at 1293 (parents had standing in action seeking declaration that Florida statute which authorized "emergency" removal of their children was unconstitutional, and seeking money damages from child welfare worker pursuant to § 1983; although temporary removal of children had already occurred and would not necessarily occur again, it seemed reasonably likely that parents could encounter future state action under the statute based on DCF's classification of one parent as fitting a "pattern of sexual offenders" and DCF's history of having investigated that parent on two separate occasions); *Lynch v. Baxley*, 744 F.2d 1452 (11th Cir. 1984) (fact that plaintiff's mental condition had prompted two emergency detentions pursuant to involuntary commitment petitions in past three years was an adequate demonstration of a realistic threat that such experiences might be repeated to confer standing upon plaintiff who sought to enjoin Alabama state officials from detaining in county jails persons awaiting involuntary civil commitment proceedings.).

Furthermore, as the Eleventh Circuit explained in *Doe v. Kearney, supra*:

> [T]he Supreme Court has recognized an exception to the basic standing requirement in cases where a plaintiff's claims are "capable of repetition, yet evading review." *Gerstein v. Pugh*, 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 861 n. 11, 43 L.Ed.2d 54 (1975); *see also Lynch*, 744 F.2d at 1457.  Pretrial detention falls into this category because it is "by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted."  *Gerstein*, 420 U.S. at 110 n. 11, 95 S.Ct. at 861 n. 11.

*Id.* at 1293.  Plaintiff's temporary involuntary commitment and subjection to involuntary examination--though not a criminal detention as in *Gerstein*--is nevertheless a form of pretrial detention that will typically have ended by the time a legal challenge can be mounted.  *See* Fla. Stat. § 39.463 (person may not be held

for involuntary examination longer than 72 hours of arrival at the facility). Consequently, any constitutional injury will likely be too fleeting to be redressed and hence qualifies as being capable of repetition yet evading review. *See, e.g., Doe v. Kearney* at 1293 (drawing same conclusion after finding that removal of parents' children--though not a criminal detention--was nevertheless a form of pretrial detention that would typically have ended by the time a legal challenge could be mounted where statute at issue required a hearing within 24 hours of state's removal of children).

Plaintiff maintains that Fla. Stat. § 394.463 is unconstitutional on its face as violative of the Due Process Clause for the following reasons:

> (1) [the statute] "do[es] not state a law that must be broken by a citizen for the Defendant's statutes to be enforced against a citizen,"

> (2) [the statute] "require[s] only judgments about a citizen (including judgments about the future),"

> (3)  when an individual has been locked up under [this statute] "generalizations can be made about the Defendant's Statutes having been enforced against the individual; thus tempting citizens . . . to slander individuals,"

> (4) [the statute] "attempt[s] to give law enforcement and locked facilities the legal ability to force medical exams on citizens against their will;"

> (5) [the statute] "attempt[s] to require citizens to be examined by psychiatrists and psychologists against their will;"

> (6) [the statute]  "attempt[s] to give organizations and/or a state the legal ability to force dangerous methodologies of treatment on citizens that can bring substantial harm to a citizen's body;"

> (7) [the statute], "by locking individuals up and not allowing them to leave on their own choice, attempt[s] to remove the legal privilege for a citizen to remove themselves from harm."

(Doc. 25, p. 5).  In order to prevail on a facial challenge, plaintiff must establish "that there is *no* set of circumstances under which the statutory provisions may be constitutionally applied." *Doe v. Kearney*, 329 F.3d at 1294 (citing *Williams v. Pryor*,

240 F.3d 944, 953 (11th Cir. 2001)).  "This 'heavy burden' makes such an attack 'the most difficult challenge to mount successfully' against an enactment."  *Horton v. City of St. Augustine, Fla.*, 272 F.3d 1318, 1329 (11th Cir. 2001) (citation omitted).

Section 394.463 authorizes law enforcement officers to take a person into custody and deliver her to a receiving facility for involuntary examination without a prior court order only where there is probable cause to believe: (1) that she is mentally ill; (2) that because of her mental illness she either has refused voluntary examination or is unable to determine for herself whether examination is necessary; and (3) that there is a substantial likelihood that without care or treatment she will cause serious bodily harm to herself or others.  Fla. Stat. § 394.463(1) and (2)(a).[9] Plaintiff complains that this violates due process because it allows law enforcement officers to take individuals into custody without evidence that they have broken a law, and further allows law enforcement officers and receiving facilities to detain and examine individuals against their will in locked facilities.[10] In other words, according to plaintiff, any law which allows for the seizure and involuntary examination of a citizen who has broken no law is *per se* unconstitutional.

The Fifth Amendment's Due Process Clause, as applied to the states through the Fourteenth Amendment, forbids the government to "depriv[e] any [person] . . . of . . . liberty . . . without due process of law."  "Freedom from imprisonment--from government custody, detention, or other forms of physical restraint--lies at the heart of the liberty that Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491, 2498, 150 L.Ed.2d 653 (2001).  However, that liberty is not absolute.  The Supreme Court has held that detention may be ordered in criminal proceedings (with adequate procedural protections) as well as "in certain special and 'narrow' nonpunitive 'circumstances' where a special justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in

---

9Citations in this report and recommendation to the Florida Statutes are to the 2002 compiled statutes as in effect at the time of the events at issue.

10The court construes plaintiff's claim as one that the statute violates substantive due process.  Plaintiff neither claims nor alleges facts to suggest that the procedures provided by the statute are constitutionally infirm.

avoiding physical restraint.'" *Id.*, 533 U.S. at 690, 121 S.Ct. at 2498-99 (citations omitted); *Addington v. Texas*, 441 U.S. 418, 426, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979) ("The state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; the state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill.").  As the Supreme Court explained in *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997):

> The Court has recognized that an individual's constitutionally protected interest in avoiding physical restraint may be overridden even in the civil context. . . .
>
>   . . . .
>
>   Accordingly, States have in certain narrow circumstances provided for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety.  *See, e.g.*, 1788 N.Y. Laws, ch. 31 (Feb. 9, 1788) (permitting confinement of the "furiously mad"); *see also* A. Deutsch, The Mentally Ill in America (1949) (tracing history of civil commitment in the 18th and 19th centuries); G. Grob, Mental Institutions in America: Social Policy to 1875 (1973) (discussing colonial and early American civil commitment statutes).  We have consistently upheld such involuntary commitment statutes provided the confinement takes place pursuant to proper procedures and evidentiary standards. *See Foucha, supra*, at 80, 112 S.Ct., at 1785- 1786; *Addington v. Texas*, 441 U.S. 418, 426-427, 99 S.Ct. 1804, 1809-1810, 60 L.Ed.2d 323 (1979). It thus cannot be said that the involuntary civil confinement of a limited subclass of dangerous persons is contrary to our understanding of ordered liberty. *Cf. id.*, at 426, 99 S.Ct., at 1809-1810.

*Id.*, 521 U.S. at 356-57, 117 S.Ct. at 2079-80.  The Supreme Court has sustained state civil commitment statutes when they have coupled proof of dangerousness with the proof of some additional factor, such as a "mental illness" or "mental abnormality." *See, e.g., Hendricks, supra*, at 356-60, 117 S.Ct. at 2079-81 (Kansas statute permitting commitment of person who, due to a "mental abnormality" or a "personality disorder," was likely to engage in "predatory acts of sexual violence"); *Heller v. Doe*, 509 U.S. 312, 314-15, 113 S.Ct. 2637, 2639-40, 125 L.Ed.2d 257 (1993) (Kentucky statute permitting commitment of "mentally retarded" or "mentally ill" and

dangerous individual); *Allen v. Illinois*, 478 U.S. 364, 366, 106 S.Ct. 2988, 2990-2991, 92 L.Ed.2d 296 (1986) (Illinois statute permitting commitment of "mentally ill" and dangerous individual); *Minnesota ex rel. Pearson v. Probate Court of Ramsey Cty.*, 309 U.S. 270, 271-272, 60 S.Ct. 523, 524-525, 84 L.Ed. 744 (1940) (Minnesota statute permitting commitment of dangerous individual with "psychopathic personality"). The statute at issue here meets the requirements of substantive due process. *Cf. Burch v. Apalachee Community Mental Health Services, Inc.*, 840 F.2d 797, 800 (11th Cir. 1988) ("Due process protection . . . requires in most cases that a person be accorded some type of hearing before being committed to a mental institution.  In limited cases where the countervailing state interests are met, due process permits a period of involuntary commitment prior to a hearing as long as a hearing is held shortly after the initial detention."); *cf Doe v. Kearney*, 329 F.3d at 1293 (allowing removal of children threatened with imminent harm when it is justified by emergency circumstances).

The statutory provision at issue here unambiguously provides that an involuntary examination can be initiated only when there is probable cause to believe that the person has a mental illness and a "substantial likelihood" that, without care or treatment, the person will cause serious bodily harm to herself or others.  Fla. Stat. § 394.463(1).  This meets the requirements of substantive due process.

Plaintiff's remaining constitutional challenges to the facial validity of the statute should also be dismissed.  As to plaintiff's facial challenge on Fourth Amendment grounds, such claim should be dismissed for failure to state a claim. Plaintiff offers no explanation why she believes the statute fails to measure up to Fourth Amendment requirements. *Cf. Cochrane v. Harvey*, No. 4:04cv475/RH/WCS, 2005 WL 2176874 at *3 n.4 (N.D. Fla. Sept. 1, 2005) (rejecting facial challenge to Fla. Stat. § 394.463(2) on Fourth Amendment grounds).[11]  Similarly, plaintiff's complaint

---

11In Cochrane, the plaintiff suggested that § 394.463(2)(a)2 impermissibly establishes a standard lower than probable cause when it states that an officer shall take into custody and person who "appears" to meet the statutory criteria.  Chief Judge Hinkle disagreed, explaining:

fails to explain why the statute violates the Equal Protection Clause.  The central mandate of the equal protection guarantee is that "[t]he sovereign may not draw distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objective." *Lehr v. Robertson*, 463 U.S. 248, 265, 103 S.Ct. 2985, 2995, 77 L.Ed.2d 614 (1983).  "Equal protection, however, does not forbid legislative classifications."  *Lofton v. Secretary of Dep't of Children and Family Servs.*, 377 F.3d 1275, 1277 (11th Cir. 2004) (citing *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992)).  "It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."  *Nordlinger*, 505 U.S. at 10, 112 S.Ct. at 2331.  In the instant case, plaintiff neither claims nor alleges facts to suggest that the statute discriminates on it face, *i.e.*, that it treats similarly situated people differently.

What remains are plaintiff's monetary damages claims against the individual State Defendants: Governor Bush, Former DCF Secretary Kearney, Former DCF Secretary Regier and DCF Secretary Hadi.  As with Sheriff McNesby, plaintiff's fifth amended complaint alleges no individual acts of wrongdoing on the part of Governor Bush, Former DCF Secretary Kearney, Former DCF Secretary Regier, or DCF Secretary Hadi.  As the State Defendants correctly point out, plaintiff merely repeatedly alleges that defendants "supported the enforcement of the Defendant's Statutes," and further asserts that the "request for law enforcement to break the Constitution has come and/or continues to come from" these defendants. (Doc. 25, ¶67).  Such general allegations are insufficient to establish that any of the State

---

A person who "appears to meet the statutory criteria is one the officer has probable cause to belie[ve] meets the criteria, based on information available to and properly relied upon by an officer, as required by the Fourth Amendment.  This reading is supported both by the accepted canon that statutes should be construed to avoid constitutional infirmities or issue and, more importantly, by the phrasing of the commitment criteria themselves, which require "reason to believe" the person ha a mental illness and a "substantial likelihood" that, without care or treatment, the person will cause serious bodily harm to herself or others.  § 394.463(1), Fla. Stat.  "Substantial likelihood" is a standard that meets or exceeds the requirement of probable cause.  There might be cases in which the statute would not measure up to Fourth Amendment requirements, but if so, this case is not one of them.

*Id.* at *3.

Defendants were personally involved in the alleged violations of plaintiff's constitutional rights, or that there is a causal connection between some action by these defendants and the alleged constitutional violations. In other words, plaintiff does not allege how any of the State Defendants "supported the enforcement" of the Baker Act against her, or that they personally directed, or caused to be directed, the enforcement of the Baker Act against plaintiff. Based on the foregoing, the State Defendants' motion to dismiss should be granted. *See supra* note 2.

**Deputy Sudduth's Motion for Summary Judgment**

The motion for summary judgment pursuant to Rule 56 was filed by defendant Deputy Christina Sudduth, who contends: (1) that there exists between the parties no genuine issue of material fact; (2) that the complaint fails to state a claim against this defendant in her official capacity as Deputy Sheriff of Escambia County, Florida; (3) that on the facts alleged, the complaint fails to establish that a constitutional right was violated; (4) that this defendant is immune from liability pursuant to Fla. Stat. § 394.459(10); and (5) that this defendant is entitled to qualified immunity because plaintiff cannot meet the burden of demonstrating that she violated clearly established law. (Doc. 50). Plaintiff did not file a specific response in opposition to this motion; however, she filed a document entitled "Answer to Defendants Tomosovic and Lee and Hughes and All the Defendants[s] Motions," which the court treats as her response to the motion. (Doc. 60).

The court will first address the official capacity claims against Deputy Sudduth. As this defendant correctly points out, plaintiff's cause of action against Deputy Sudduth in her official capacity as an Escambia County Deputy Sheriff is the same as a suit against the Escambia County Sheriff's Office (or Escambia County). *Hobbs v. Roberts*, 999 F.2d 1526, 1530 (11th Cir. 1993) ("[O]fficial capacity suits represent 'only another way of pleading an action against an entity of which an officer is an agent,' and a victory against a named individual in an official capacity suit is 'a victory against the entity that employs him.'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 167-68, 105 S.Ct. 3099, 3105-06, 87 L.Ed.2d 114 (1985))); *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir. 1991) ("A suit against a municipal officer sued in

his official capacity is the functional equivalent of a suit brought against the municipality or local government."). In this cause of action, plaintiff also sued Sheriff McNesby in his official capacity. Therefore, a claim against Deputy Sudduth in an official capacity is redundant and improper.

Furthermore, plaintiff neither claims nor alleges facts to suggest that Deputy Sudduth possessed the final policymaking authority required to support an official capacity claim. *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990) ("[T]o subject the Sheriff's Department to liability for [deputy sheriff's] deeds, [deputy sheriff] must have possessed the authority to make final policy.") (citing *City of St. Louis v. Praprotnik*, 458 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) (plurality opinion)). "[T]he mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority. Rather, the delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review." *Mandel v. Doe*, 888 F.2d 783, 792 (11th Cir. 1989) (citing *Praprotnik*, 485 U.S. at 125-28, 108 S.Ct. at 924-26). Based on the foregoing, plaintiff's official capacity claims against defendant Deputy Sudduth should be dismissed.

As for plaintiff's claims against Deputy Sudduth in her individual capacity, the court concludes that Deputy Sudduth's motion for summary judgment should be granted.

A. <u>Summary Judgment Standard</u>

In order to prevail on her motion for summary judgment, defendant Deputy Sudduth must show that plaintiff has no evidence to support her case or present affirmative evidence that plaintiff will be unable to prove her case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If the defendant successfully negates an essential element of plaintiff's case, the burden shifts to plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material

fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." *Id. Accord Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).  Further, plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. *Celotex Corp.*, 477 U. S. at 324 (quoting FED.R.CIV.P. 56(e)).  Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  *Celotex Corp., supra*; *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997)("Rule 56(e) . . . requires the nonmoving party to go beyond the pleading and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"), *cert. denied*, 522 U.S. 1126 (1998) (quoting *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c), (e))); *Hammer v. Slater*, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to plaintiff.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999).  A motion for summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S. Ct. at 2552.

B. Plaintiff's and Undisputed Facts

Plaintiff's fifth amended complaint alleges that on May 8, 2002 Deputy Sudduth enforced the Baker Act against her, and that she detained, questioned and handcuffed plaintiff, seized plaintiff's pocketbook, and transported plaintiff to a

mental health facility against plaintiff's will, without a warrant and without evidence that plaintiff had broken a law.  (Doc. 25, ¶¶24, 27-33).

The affidavit of Deputy Sudduth states that on May 8, 2002 she was dispatched to the Miracle Faith Center at 4317 North Palafox Street, Pensacola, Florida, in response to a suspicious person or possible Baker Act complaint.  (Doc. 50, Sudduth Aff. ¶2).  Upon her arrival, she contacted plaintiff, who stated to her that she wanted to talk to the pastor of the church and that if she did not talk to the pastor, she did not know if she was going to live or die.  (*Id.*, ¶3).  Plaintiff also stated to Deputy Sudduth that the previous night while she was in her hotel room a bolt of lightning came up through the floor and struck her.  (*Id.*).  Deputy Sudduth then contacted Diane Curtis Richards, an employee of the Miracle Faith Center.  Ms. Richards advised Sudduth that plaintiff had been a member of the Miracle Faith Center for the previous three years and that within the past month plaintiff had lost a lot of weight.  Ms. Richards further stated that on several occasions plaintiff walked down the church hallway and for no apparent reason began cursing at other church members. Ms. Richards stated that on the particular evening of May 8, 2002, plaintiff had insisted on talking to the pastor of the church, telling Ms. Richards that if she did not talk to the pastor she did not want to live.  The pastor was not present that evening.  (*Id.*, ¶4).  Deputy Sudduth asked plaintiff if she wanted to go to the Lakeview Center.  Plaintiff did not respond to the question.  She told Deputy Sudduth that if she could not speak with the pastor that evening, she did not want to live.  (*Id.*, ¶5).  Based on the statements of plaintiff, the information provided by Ms. Richards, Deputy Sudduth's own observations of plaintiff, and plaintiff's inability to determine for herself if a medical evaluation was needed, Deputy Sudduth placed plaintiff in the backseat of her patrol car and transferred her to Lakeview Center for medical evaluation and possible treatment.  (*Id.*, ¶¶5-6).

In accordance with Escambia county Sheriff's Office and for reasons of officer safety, Deputy Sudduth handcuffed plaintiff before placing her in the back of her patrol car and placed plaintiff's personal property (a purse) in the front seat of the patrol car before transporting plaintiff to Lakeview Center.  (*Id.*, ¶7).  When Deputy

Sudduth arrived at Lakeview Center, she turned plaintiff's purse over to personnel at that facility. (*Id.*, ¶8). Attached to Deputy Sudduth's affidavit is a copy of the Offense Report she prepared with respect to the incident. (*Id.*, Attach. "Offense Report"). The offense report corroborates Deputy Sudduth's version of events.

In response to the motion, plaintiff has presented argument; however, she has provided no additional Rule 56 materials.[12]

### C. Conclusions of Law Regarding Material Facts

Plaintiff has failed to come forward with evidentiary material demonstrating a genuine issue of fact for trial. Furthermore, for the reasons that follow the court concludes that Deputy Sudduth is entitled to judgment as a matter of law based on qualified immunity.

The parties do not dispute that Deputy Sudduth was acting under her discretionary authority in enforcing the Baker Act. Even if the court was required to make that determination, the summary judgment record establishes that Deputy Sudduth was performing a discretionary function at the time the alleged violation of federal law occurred. "To determine whether an official was engaged in a discretionary function, we consider whether the acts the official undertook 'are of a type that fell within the employee's job responsibilities.'" *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)). Because making an arrest and seizing a person for the purpose of an involuntary examination under the Baker Act is within

---

12The court provided plaintiff thirty days in which to respond to Deputy Sudduth's motion for summary judgment, specifically advising her of the Rule 56 requirements for opposing such a motion. (*See* Doc. 52). Thereafter, plaintiff sought an extension of time on the basis that she was proceeding *pro se*, that she needed to complete "tasks" outside of this litigation, that she did not have a secretary, maid or legal aide, and that she was having to prepare other responsive pleadings. (Doc. 53). The court granted plaintiff a thirty-day extension (until August 15, 2005); however, she was advised that no further extensions would be granted absent exceptional circumstances. (Doc. 54). On August 18, 2005 plaintiff requested another extension of time, indicating that she had combined her response to the State Defendants' motion to dismiss with her response to Defendant Sudduth's motion for summary judgment, that she wanted "a little time to finish the . . . combined answer," but that she did not want to submit that combined response until she had considered the Federal Defendants' answer. (Doc. 58). The court denied the request. (Doc. 59). Thereafter, plaintiff filed a pleading entitled "Answer To Defendants Tomasovic And Lee And Hughes And All The Defendants Motions." (Doc. 60). The pleading presents only argument, and does not contain any affidavits or other Rule 56 materials.

the official responsibilities of a sheriff's deputy, Deputy Sudduth was performing a discretionary function when she seized plaintiff.  *See Crosby v. Monroe County, supra.*

Therefore, plaintiff has the burden to show that: (1) Deputy Sudduth's conduct violated a constitutional right and (2) the right was clearly established.  *See Strock v. City of Coral Springs*, 354 F.3d 1307, 1309 (11th Cir. 2003) (citing *Saucier v. Katz*, 553 U.S. at 201, 121 S.Ct. at 2156).  In determining whether defendant Sudduth is entitled to qualified immunity, "[t]he issue . . . is not whether probable cause existed but instead whether there was arguable probable cause."  *Crosby v. Monroe County*, 394 F.3d at 1332; *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) ("all that is required for qualified immunity to be applicable to an arresting officer is '*arguable* probable cause. . . .'" (quoting *Redd v. City of Enterprise*, 140 f.3d 1378, 1384 (11th Cir. 1998))); *Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999) ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry.").  Arguable probable cause exists if, under all of the facts and circumstances and the information the officer possessed, an officer reasonably could have believed that probable cause was present.  *Crosby v. Monroe County* at 1332; *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003) ("Arguable probable cause exists when an officer reasonably could have believed that probable cause existed, in lights of the information the officer possessed." (internal marks and citation omitted)); *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000) ("[A] police officer is entitled to qualified immunity if a reasonable police officer could have believed his or her actions were lawful in light of clearly established law and the information possessed by the officer at the time the conduct occurred.").

The standards governing whether a person may be taken for an involuntary mental examination in Florida are established by statute:

> (1) CRITERIA.--A person may be taken to a receiving facility for involuntary examination if there is reason to believe that the person has a mental illness and because of his or her mental illness:
>
> (a)1. The person has refused voluntary examination after conscientious explanation and disclosure of the purpose of the examination; or

2.  The person is unable to determine for himself or herself whether examination is necessary; and

(b)1.  Without care or treatment, the person is likely to suffer from neglect or refuse to care for himself or herself; such neglect or refusal poses a real and present threat of substantial harm to his or her well-being; and it is not apparent that such harm may be avoided through the help of willing family members or friends or the provision of other services; or

2.  There is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or herself or others in the near future, as evidence by recent behavior.

§ 394.463, Fla. Stat. (2002).  These are the standards that govern the issue of whether plaintiff's commitment in the case at bar was lawful.  As Chief Judge Hinkle recently explained in a case similar to the one here:

> To be sure, the *Fourth Amendment* also applies to the seizure of a person for the purpose of such an examination.  But at least in respects relevant to the case at bar, the Fourth Amendment neither adds to nor detracts from the Florida statutory standards.  First the Fourth Amendment does not prohibit such a seizure based on probable cause to believe the criteria set forth in § 394.463(1) have been met. And conversely, the Fourth Amendment *do*es prohibit such a seizure in Florida if there is not probable cause to believe these criteria have been met.  This is so because Florida law recognizes no extra-statutory basis for such a seizure, and the Fourth Amendment prohibits a seizure absent probable cause to believe the governing substantive standards have been met.  Thus, the Fourth Amendment was violated by plaintiff's seizure if and only if the statute was violated.

*Cochrane v. Harvey*, No. 4:04cv475/RH, 2005 WL 2176874 at *3 (N.D. Fla. Sept. 1, 2005) (footnote omitted, emphasis in original); *see also Villanova v. Abrams*, 972 F.2d 792, 795 (7th Cir. 1992) (The Fourth Amendment requires that an involuntary hospitalization "may be made . . . only if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard."); *Fisher v. Harden*, 398 F.3d 837, 842-43 (6th Cir. 2005) ([I]n the context of a mental health seizure an officer must have probable cause to believe that the person seized poses a danger to himself or others."); *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997) ("The Fourth Amendment requires an official seizing and detaining a

person for a psychiatric evaluation to have probable cause to believe that the person is dangerous to himself or others."); *Glass v. Mayas*, 984 F.2d 55, 58 (2nd Cir. 1993) ("The Fourth Amendment requires an official to have probable cause to believe that a person is dangerous to himself or others before he can seize and detain the person for a psychiatric evaluation.").

The facts set forth above as contained in Deputy Sudduth's affidavit are undisputed.[13]  Based on these facts, including information provided by Ms. Richards as to plaintiff's statements and behavior, plaintiff's statements to Deputy Sudduth that she had been struck by a bolt of lightning through her hotel room floor the night before and that she did not want to live if she could not speak with the pastor that evening, and plaintiff's inability to determine for herself whether a medical evaluation was needed, an officer in Deputy Sudduth's position reasonably could have believed that plaintiff had a mental illness, that she was unable to determine for herself whether an examination was necessary, and that there was a "substantial likelihood" that without care or treatment she would cause serious bodily harm to herself or others.  Deputy Sudduth had arguable probable cause to seize plaintiff for an involuntary mental examination.  Thus, Deputy Sudduth is protected from liability on plaintiff's Fourth Amendment claim by the doctrine of qualified immunity.

Plaintiff also alleges that her detention and involuntary examination violated her Fourteenth Amendment due process rights because there was no evidence she had broken a law.[14]  In other words, plaintiff asserts a substantive due process claim

---

[13]Neither plaintiff's complaint nor her response to the summary judgment motion raises a genuine dispute of material fact with respect to the issue of whether Deputy Sudduth was entitled to seize plaintiff under the Baker Act.  The only basis for plaintiff's claim that Deputy Sudduth "wrongfully" detained her is that it was done "against Plaintiff's will, without the Plaintiff breaking a law (and thus without evidence of breaking a law)." (Doc. 25, ¶27).  Similarly, the only basis for plaintiff's claim that Deputy Sudduth "wrongfully" removed plaintiff's pocketbook is that it was done "without the Plaintiff breaking a law (and thus without evidence of breaking a law)." (*Id.*, ¶ 28).  These allegations add nothing to the arguable probable cause inquiry.  As previously discussed, neither the Baker Act nor the Fourth Amendment requires evidence of criminal activity or the breaking of a law in order for an initial detention and involuntary examination to be authorized.

[14]Although plaintiff generally claims that Deputy Sudduth detained, questioned, cuffed, transported and locked up plaintiff "without due process of law," and that the Deputy also removed plaintiff's pocketbook "without due process of law," plaintiff fails to specify in what way the legal procedures required for an involuntary examination were violated.  (Doc. 25, ¶55).  *See Burch v.*

against Deputy Sudduth based on the Deputy's application of § 394.463 to her.  As previously discussed, the Supreme Court has held that a citizen can be confined through the civil commitment process if they appear to be mentally ill and dangerous, regardless of whether they have violated a criminal law.  Florida's involuntary examination statute requires probable cause to believe the person is mentally ill and dangerous to herself or others.  Thus, the availability of qualified immunity again turns on whether Deputy Sudduth's conduct was objectively reasonable.  Because the court has already concluded that defendant Deputy Sudduth was objectively reasonable in finding plaintiff mentally ill and dangerous to herself in the Fourth Amendment context, it follows that the Deputy was objectively reasonable in making the same determination in the due process context.  Therefore, Deputy Sudduth is protected from liability for violating the Due Process Clause by the doctrine of qualified immunity.

### Federal Defendants' Answer Requesting Dismissal

The answer was filed by defendants J.R. Tomasovic, J.D. Lee and John Hughes (hereinafter "Federal Defendants"), who contend: (1) that the complaint fails to state a claim upon which relief can be granted; (2) that at all times relevant they were federal employees acting within the scope of their discretionary authority and are therefore protected by qualified immunity they are entitled to qualified immunity; and (3) that plaintiff has failed to establish that this court has subject matter jurisdiction over the instant action. (Doc. 55). Alternatively, the Federal Defendants deny all allegations of the complaint. (*Id.*).  Plaintiff has responded in opposition to the request for dismissal. (Doc. 60).  Because plaintiff has responded to the Federal Defendants' request for dismissal, the court construes the answer as a motion to dismiss.

To the extent plaintiff sues Defendants Tomasovic, Lee and Hughes in their official capacities, that portion of plaintiff's action is really against the United States. *See Dugan v. Rank*, 372 U.S. 609, 619-22, 83 S.Ct. 999, 1005-07, 10 L.Ed.2d 15 (1963);

---

*Apalachee Community Mental Health Services, Inc.*, 840 F.2d 797 (11th Cir. 1988) ("In limited circumstances [such as those described in *Addington*] due process permits a period of involuntary commitment prior to a hearing as long as a hearing is held shortly after the initial detention.").

Daniel v. U.S., 891 F.Supp. 600, 603 (N.D. Ga. 1995). The United States is immune from suit unless there has been an unequivocal waiver of immunity. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 32, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (1992); *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Waiver of sovereign immunity is a prerequisite to subject matter jurisdiction. *Sherwood*, 312 U.S. at 586, 61 S.Ct. at 769. The United States has not waived its sovereign immunity from suit for money damages arising from constitutional violations. *United States v. Timmons*, 672 F.2d 1373, 1380 (11th Cir. 1982); *Kunkler v. Fort Lauderdale Housing Authority*, 764 F.Supp. 171, 176 (S.D. Fla. 1991). As plaintiff's claims for money damages against the United States (*i.e.*, against the individual federal defendants in an official capacity), are barred by sovereign immunity, they should be dismissed. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985); *see also Marsden v. Federal B.O.P.*, 856 F.Supp. 832, 835 (S.D. N.Y. 1994) (claims for money damages against individual federal defendants in an official capacity must be dismissed for lack of jurisdiction).

With regard to plaintiff's individual capacity claims, the allegations of plaintiff's fifth amended complaint for deprivation of her constitutional rights may be construed as seeking to raise a *Bivens* claim against the federal officials. *Rosado v. Curtis*, 885 F.Supp. 1538, 1542-43 (M.D. Fla.1995), *aff'd*, 84 F.3d 437 (11th Cir. 1996); *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (recognizing an implied cause of action under the Constitution against federal employees in their individual capacities for violation of constitutional rights). Courts generally apply § 1983 law to *Bivens* cases. *Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th Cir. 1998); *see e.g., Butz v. Economou*, 438 U.S. 478, 500, 98 S.Ct. 2894, 2907, 57 L.Ed.2d 895 (1978) (A federal official sued under *Bivens* has the same immunity as a similar state official sued for identical violation under § 1983.); *Dalrymple v. Reno, supra* (determining that federal official sued in her personal capacity in *Bivens* action was entitled to qualified immunity).

The plaintiff in this case has failed to allege a constitutional violation by former Chief Park Ranger Tomasovic or present Chief Park Ranger Lee. Plaintiff's fifth amended complaint does not allege personal involvement by either of these defendants in either incident involving plaintiff being taken into custody for involuntary examination. For example, plaintiff does not allege that either defendant personally enforced the state statute against her, that either defendant knew of, or was involved in the decision to take her into custody, or that either defendant approved of Park Ranger Hughes' decision to seize plaintiff for an involuntary examination. Plaintiff cannot maintain a cause of action against Defendant Tomasovic for the allegedly unconstitutional actions of Park Ranger Hughes based solely on the fact that Tomasovic was Park Ranger Hughes' ultimate supervisor at the time of July 2002 incident. *Dalrymple*, 334 F.3d at 995-96 (Supervisory officials are not liable under *Bivens* for unconstitutional acts of their subordinates on basis of *respondeat superior* or vicarious liability.). Her allegation that Defendants Tomasovic and Lee "supported" the enforcement of the statute during their respective tenures as chief park ranger, standing alone, is vague and conclusory and fails to meet the heightened pleading requirements for civil rights cases involving qualified immunity. Liberally construing plaintiff's allegations, they fail to suggest that Defendant Tomasovic's or Defendant Lee's actions or inactions had anything to do with the allegedly unconstitutional actions of Park Ranger Hughes. Thus, plaintiff's individual capacity claims against these defendants should be dismissed. *See supra* note 2.

As for plaintiff's claims against Defendant Park Ranger Hughes in his individual capacity, the record is insufficient to enable the court to determine whether this defendant is entitled to qualified immunity, and such claims would more appropriately be considered on a motion for summary judgment with supporting evidence. Therefore, the undersigned will recommend that this matter be referred to the undersigned for further proceedings on plaintiff's damages claims against this individual defendant.

## CONCLUSION

For the foregoing reasons, plaintiff's § 2201 claim for a declaratory judgment should be dismissed with prejudice for failure to state a claim upon which relief may be granted. All of plaintiff's § 1983 claims against Defendant Sheriff McNesby should be dismissed with prejudice. All of plaintiff's § 1983 claims against each State Defendant should be dismissed with prejudice. Summary judgment should be entered in favor of Defendant Deputy Sudduth with respect to all of plaintiff's § 1983 claims. All of plaintiff's claims against Defendants Tomasovic and Lee should be dismissed with prejudice. Plaintiff's damages claims against Defendant Hughes in his official capacity should be dismissed with prejudice. The only claim that should be allowed to proceed is plaintiff's damages claim against Defendant Hughes in his individual capacity.

Accordingly, it is respectfully RECOMMENDED:

1. That Defendant Sheriff McNesby's motion to dismiss (doc. 35) be GRANTED, that all of plaintiff's claims against this defendant be DISMISSED with prejudice, and that the clerk be directed to enter judgment in favor of this defendant.

2. That Defendants State of Florida, Governor Bush, Former Secretary Kearney, Former Secretary Regier and DCF Secretary Hadi's motion to dismiss (doc. 48) be GRANTED, that all of plaintiff's claims against these defendants be DISMISSED with prejudice, and that the clerk be directed to enter judgment in favor of each of these defendants.

3. That Defendant Deputy Sudduth's motion for summary judgment (doc. 50) be GRANTED, and that the clerk be directed to enter judgment in favor of Defendant Deputy Sudduth on all of plaintiff's claims.

4. That Defendants Former Chief Park Ranger Tomasovic, Chief Park Ranger Lee, and Park Ranger Hughes' answer requesting dismissal (doc. 55), construed as a motion to dismiss, be GRANTED IN PART as follows:

    a. All of plaintiff's claims against Defendants Tomasovic and Lee be DISMISSED with prejudice, and

     b.  Plaintiff's damages claims against Defendant Hughes in his official capacity be DISMISSED with prejudice

and that the clerk be directed to enter judgment accordingly.

    5.  That plaintiff's claim under the Declaratory Judgment Act be DISMISSED with prejudice.

    6.  That this matter be remanded to the undersigned for further proceedings on plaintiff's damages claims against Defendant Park Ranger Hughes in his individual capacity.

    At Pensacola, Florida, this 24th day of October, 2005.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**