IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**RUTH MCQUADE,**
         **Plaintiff,**

vs.                                                      Case No.  3:04cv170/RV/MD

**STATE OF FLORIDA, et al.,**
         **Defendants.**
_____

**REPORT AND RECOMMENDATION**

Defendant Park Ranger Hughes, the only defendant remaining in this cause of action, has filed a motion for summary judgment and a memorandum of law which includes a statement of undisputed material facts.  (Docs. 74 & 75).  The *pro se* plaintiff has not responded to the motion.  On February 6, 2006 the court entered an order informing the parties that the motion for summary judgment would be taken under advisement on March 6, 2006.  (Doc. 23).  The order also advised the parties of the importance and ramifications of Rule 56 summary judgment consideration, and directed the parties to file and serve affidavits and any other documents or materials authorized to be filed under the Federal Rules of Civil Procedure prior to the advisement date.  (*Id.*).  No additional materials were filed by either party.  On April 13, 2006 the court entered an order requiring defendant Hughes to supplement his motion for summary judgment.  (Doc. 82).  Defendant Hughes filed said supplement on May 3, 2006.  (Doc. 83).  Plaintiff was given twenty days in which to respond to the supplement.  (Doc. 82).  As of today's date, no response has been filed.  Upon review of the submissions of the parties, it is the opinion of the undersigned that the motion for summary judgment filed by defendant Hughes should be granted.

## PROCEDURAL HISTORY

Plaintiff commenced this action on May 7, 2004 by filing a complaint asserting claims under the Civil Rights Act, 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C. § 2201. Her claims concerned the Florida Mental Health Act a/k/a the Baker Act, Fla. Stat. §§ 394.451-.4789 (hereinafter "Baker Act") and its application to her on two separate occasions. In her fifth amended complaint, plaintiff named the following defendants: "the State of Florida; Jeb Bush, individual, while operating as Governor; Kathleen A. Kearney, individual, while operating as Secretary of the Department of Children and Families in 2002 (ending 8/03/2002); Jerry Regier, individual, while operating as Secretary of the Department of Children and Families in 8/03/2002-2004; Lucy D. Hadi, individual, while operating as Secretary of the Department of Children and Families in 2005; Ron McNesby, individual and official, while operating as Sheriff for Escambia County in 2002-2005; Christina Suddeth, individual and official, while operating as Deputy for Escambia County in 2002-2005; J.R. Tomasovic, individual and official, while operating as Chief Ranger of Gulf Breeze National Seashore Federal Law Enforcement in 2002-3/2003; J. D. Lee, individual and official, while operating as Chief Ranger of Gulf Breeze National Seashore Federal Law Enforcement in 7/13/2003-2005; John Hughes, individual and official, while operating as Park Ranger of Gulf Breeze National seashore Federal Law Enforcement in 2002-11/2003." (Doc. 25, p. 1). As relief, plaintiff sought a declaratory judgment declaring Florida Statutes § 394.4625 ("Voluntary Admissions"), § 394.463 ("Involuntary Examination"), § 394.467 ("Involuntary Placement"), and § 394.4655 ("Involuntary Outpatient Placement") "null and void." (Doc. 25, p. 9). She additionally sought monetary damages "as are reasonable and just as a direct and proximate result of the defendants' violations of [her constitutional rights]." (*Id.*).

On December 14, 2005 the District Judge entered an order dismissing all of plaintiff's claims against all defendants, with the exception of plaintiff's damages claims against defendant Hughes in his individual capacity. (Doc. 67). Thereafter, defendant Hughes filed the instant motion for summary judgment.

**PLAINTIFF'S ALLEGATIONS AND UNDISPUTED MATERIAL FACTS[1]**

Plaintiff's fifth amended complaint alleges that on July 29, 2002 Park Ranger Hughes enforced the Baker Act against her, and that he detained, questioned and handcuffed plaintiff, seized plaintiff's pocketbook, and transported plaintiff to a medical facility against plaintiff's will, without a warrant and without evidence that plaintiff had broken a law. (Doc. 25, ¶¶ 25, 34-40 ).

At the time of the events giving rise to plaintiff's complaint, Ranger Hughes was a Park Ranger with the National Park Service ("NSP") at the Gulf Islands National Seashore ("the Seashore") in Gulf Breeze and Pensacola Beach, Florida. (Doc. 75, Ex. 2, ¶ 1). While on duty as a Park Ranger on July 29, 2002, at approximately 12:00 p.m. Ranger Hughes received a 911 dispatch call to investigate two reports regarding the actions of a female who was acting suspiciously at the Seashore. (*Id.*, ¶ 2). This female turned out to be plaintiff. One of the callers to the NSP dispatch stated that the female was swinging a large stick, yelling, screaming, running around and acting deranged.

One of Ranger Hughes' duties as a Park Ranger and a Seashore law enforcement officer was to respond to such calls. (*Id.*, ¶ 3). On July 29, 2002, Ranger Hughes, District Ranger John Bandurski, and an Escambia County Deputy Sheriff responded to the call. When Ranger Hughes arrived at the scene and made contact with plaintiff, he observed that she was acting irrationally, was very agitated and seemed to be unable to care for herself. She was very combative and could not explain her behavior except to say that she was "miming." (*Id.*, ¶ 4). One witness informed Ranger Hughes that plaintiff initially had acted as though she was going to commit suicide by swimming out into the Gulf of Mexico. Another witness informed Ranger Hughes that plaintiff was walking through traffic and that he (the

---

[1]The court conveys as facts those set forth in Defendant Park Ranger Hughes' statement of undisputed material facts (doc. 75, ex. 1), as well as those factual allegations of plaintiff's verified fifth amended complaint (doc. 25), and Defendant Hughes' affidavit in support of his motion for summary judgment, including attachments (doc. 75, exs. 2 & 3) which comply with the requirements for affidavits specified in Rule 56--that they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED.R.CIV.P.56(e); *see, e.g., Dickinson v. Wainwright*, 626 F.2d 1184, 1186 (5th Cir. 1980); *Murrell v. Bennett*, 615 F.2d 306, 310 n. 5 (5th Cir. 1980).

witness) feared that plaintiff might be struck by a passing vehicle. Upon personally observing plaintiff, Ranger Hughes believed she needed assistance because she was clothed in long pants, a thick shirt and shoes, although the temperature was in the mid-90s and the humidity was very high that day. (*Id.*, ¶ 5). Additionally, plaintiff told Ranger Hughes that she wanted to take a swim, but Ranger Hughes determined that it would be detrimental because of plaintiff's mental state, the rough surf conditions and a long history of drowning deaths at that location. Based upon his observations and the witnesses' statements, Ranger Hughes took plaintiff into custody, placed her in handcuffs in his squad car,[2] and transported her to Gulf Breeze Hospital for psychiatric evaluation. (*Id.*, ¶ 6). Ranger Hughes had plaintiff's car impounded for safe keeping while she received medical attention at the hospital. (*Id.*, ¶ 7). Ranger Hughes then prepared an incident report, as required by the NPS. He had no further contact with plaintiff. (*Id.*, ¶ 8). The incident report corroborates Ranger Hughes' version of events.

Plaintiff asserts that Ranger Hughes' acts were "wrongful," and occurred "against the [p]laintiff's will and without the [p]laintiff breaking a law (and thus without evidence of breaking a law)." (Doc. 25, ¶¶ 34-41). Plaintiff maintains that this conduct violated her Fourth, Fifth, Sixth and Fourteenth Amendment rights because it was done "without the plaintiff breaking a law (and thus without evidence of breaking a law)."

Ranger Hughes, in his motion for summary judgment, contends that the essential facts surrounding the incident giving rise to plaintiff's claims against him in his individual capacity are remarkably similar to those upon which plaintiff's claims against defendant Deputy Sudduth were based. On October 24, 2005 the undersigned issued a Report and Recommendation (doc. 61) which concluded that, as to plaintiff's claims against Deputy Sudduth in her individual capacity, Deputy Sudduth's Motion for Summary Judgment should be granted as a matter of law because, given the undisputed facts, Deputy Sudduth was protected from liability from plaintiff's claims by the doctrine of qualified immunity. That Report and

---

[2]This was in compliance with the NPS' standard procedure.

**Recommendation was adopted by the District Judge on December 14, 2005 (doc. 67). Ranger Hughes is correct -- he likewise is entitled to summary Judgment.**

## LEGAL STANDARDS

Because plaintiff is proceeding *pro se*, her pleadings are held to a less stringent standard than pleadings drafted by an attorney, and will be liberally construed. *Haines v. Keener*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972); *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003). The allegations of plaintiff's fifth amended complaint for deprivation of her constitutional rights may be construed as seeking to raise a *Bivens* claim against Ranger Hughes, who is a federal official. *Rosado v. Curtis*, 885 F.Supp. 1538, 1542-43 (M.D. Fla.1995), *aff'd*, 84 F.3d 437 (11th Cir. 1996); *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (recognizing an implied cause of action under the Constitution against federal employees in their individual capacities for violation of constitutional rights). Courts generally apply § 1983 law to *Bivens* cases. *Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th Cir. 1998); *see e.g., Butz v. Economou*, 438 U.S. 478, 500, 98 S.Ct. 2894, 2907, 57 L.Ed.2d 895 (1978) (A federal official sued under *Bivens* has the same immunity as a similar state official sued for identical violation under § 1983.); *Dalrymple v. Reno*, 334 F.3d 991, 995-96 (11th Cir. 2003) (determining that federal official sued in her personal capacity in *Bivens* action was entitled to qualified immunity).

<u>Summary Judgment Standard</u>

In order to prevail on a motion for summary judgment, the moving party (Ranger Hughes in this case) must show that plaintiff has no evidence to support her case or present affirmative evidence that plaintiff will be unable to prove her case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If Ranger Hughes successfully negates an essential element of plaintiff's case, the burden shifts to the plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.*

In order for plaintiff to meet her burden, she may not rest upon the mere allegations or denials of her pleading; rather, she must produce affidavits or other summary judgment materials which "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (emphasis added).[3]  Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  *Celotex Corp., supra*; *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997)("Rule 56(e) . . . requires the nonmoving party to go beyond the pleading and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"), *cert. denied*, 522 U.S. 1126 (1998) (quoting *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c), (e))); *Hammer v. Slater*, 20 F.3d 1137 (11th Cir. 1994).  When faced with a motion for summary judgment, while a court must view the evidence in the light most favorable to the non-moving party, the non-moving party still bears the burden of coming forward with sufficient evidence of every element that she must prove.  *Celotex Corp.*, 477 U.S. 317 (1986).

Additionally, as the parties in this case were advised, (doc. 69, pp. 7 & 8), the Local Rules require that a party opposing a motion for summary judgment file and serve a statement of the material facts as to which it is contended there exists a genuine issue to be tried.  N.D. FLA. LOC. R. 56.1(A).  Unless the material facts set

---

[3] A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law."  *Id.*  Accord *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).  Further, plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient.  *Celotex Corp.*, 477 U. S. at 324 (quoting FED.R.CIV.P. 56(e)).

forth in the moving party's statement are controverted by a statement filed by the opposing party, such facts will be deemed admitted.

**Qualified Immunity**

Ranger Hughes asserts that he is entitled to qualified immunity from suit in his individual capacity. The doctrine of qualified immunity is a guarantee of fair warning. *McElligott v. Foley,* 182 F.3d 1248, 1260 (11th Cir. 1999). It shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct. *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Conn v. Gabbert,* 526 U.S. 286, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *Powell v. Ga. Dep't of Human Resources*, 114 F.3d 1074 (11th Cir. 1997). Qualified immunity seeks to ensure that individuals can reasonably anticipate when their conduct may give rise to liability, and hence, liability only attaches if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right. *McElligott*, 182 F.3d at 1260 (citing *United States v. Lanier,* 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)).

In order to receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.,* at 1194. The Supreme Court has established a two-part test for evaluating a claim of qualified immunity. First, the trial court must determine whether a constitutional right has been violated on the facts alleged. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). The court must assess the facts in a light most favorable to the party asserting the injury. *Id.* Second, if a violation has been established, the court must

determine whether the right was "clearly established." *Id*. The very action in question need not have been held unlawful for an official to lose the protection of qualified immunity. *Hope v. Pelzer*, 122 S.Ct. at 2515; *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Officials can still be on notice that their conduct violates established law even in novel factual circumstances, and there is no requirement that previous cases be "fundamentally" or even "materially" similar. *Hope v. Pelzer*, 122 S.Ct. at 2516. Instead, the law merely must give defendants "fair warning" that their actions are unconstitutional. *Id*. In light of pre-existing law, the unlawfulness must be apparent. *Id*.; *Creighton*, 483 U.S. at 640, 107 S.Ct. 3034.

"In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Wilson v. Strong*, 156 F.3d 1131, 1135 (11th Cir. 1998) (quoting *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n. 4. (11th Cir. 1997)).

## Fourth Amendment Standard

"An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest." *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir.), *cert. denied*, 540 U.S. 879, 124 S.Ct. 298, 157 L.Ed.2d 143 (2003) (citing *Lee v. Ferraro*, 284 F.3d at 1194-95). "For probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances." *Lee*, 284 F.3d at 1195. "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (internal quotation marks omitted).

## Conclusions of Law Regarding Material Facts

Plaintiff has failed to come forward with evidentiary material demonstrating a genuine issue of fact for trial. Furthermore, for the reasons that follow the court

concludes that Ranger Hughes is entitled to judgment as a matter of law based on qualified immunity.

The parties do not dispute that Ranger Hughes was acting under his discretionary authority in enforcing the Baker Act. Even if the court wererequired to make that determination, the summary judgment record establishes that Ranger Hughes was performing a discretionary function at the time the alleged violation of federal law occurred.

To determine whether Ranger Hughes was engaged in a discretionary function, the court must ask "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman*, 370 F.3d 1252, 1265 (11th Cir. 2004). In support of his motion for summary judgment, Ranger Hughes submitted an affidavit attesting that one of his duties as a Seashore law enforcement ranger was to respond to NPS dispatch calls. (Doc. 75, Hughes Aff. dtd. 8/24/05, ¶ 6). He also submitted evidence establishing that at all times relevant to this action, the National Park Service at Gulf Islands National Seashore and the Escambia County Sheriff's Department were parties to a Mutual Assistance Agreement, pursuant to which Ranger Hughes held a deputation from the Sheriff of Escambia County, Florida. (Doc. 83).[4] This Mutual Assistance Agreement and the deputation of Ranger Hughes thereunder provided the authority for Hughes to assist in the enforcement of the Baker Act, including arresting and seizing persons for purposes of involuntary examination under that Act. Based on the foregoing, Ranger Hughes has established that he was acting under his discretionary authority at the time the alleged violation of federal law occurred.

Therefore, plaintiff has the burden to show that: (1) Ranger Hughes' conduct violated a constitutional right and (2) the right was clearly established. *See Strock v. City of Coral Springs*, 354 F.3d 1307, 1309 (11th Cir. 2003) (citing *Saucier v. Katz*, 553 U.S. at 201, 121 S.Ct. at 2156). In determining whether defendant Hughes is

---

[4] Attached to defendant Hughes' declaration is a copy of the Mutual Assistance Agreement and Hughes' deputation.

entitled to qualified immunity, "[t]he issue . . . is not whether probable cause existed but instead whether there was arguable probable cause." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004); *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) ("all that is required for qualified immunity to be applicable to an arresting officer is '*arguabl*e probable cause. . . .'" (quoting *Redd v. City of Enterprise*, 140 F.3d 1378, 1384 (11th Cir. 1998))); *Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999) ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry."). Arguable probable cause exists if, under all of the facts and circumstances and the information the officer possessed, an officer reasonably could have believed that probable cause was present. *Crosby v. Monroe County* at 1332; *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003) ("Arguable probable cause exists when an officer reasonably could have believed that probable cause existed, in lights of the information the officer possessed." (internal marks and citation omitted)); *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000) ("[A] police officer is entitled to qualified immunity if a reasonable police officer could have believed his or her actions were lawful in light of clearly established law and the information possessed by the officer at the time the conduct occurred."). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (internal quotation marks omitted).

The standards governing whether a person may be taken for an involuntary mental examination in Florida are established by statute:

> **(1) CRITERIA.--A person may be taken to a receiving facility for involuntary examination if there is reason to believe that the person has a mental illness and because of his or her mental illness:**
>
> **(a)1. The person has refused voluntary examination after conscientious explanation and disclosure of the purpose of the examination; or**
>
> **2. The person is unable to determine for himself or herself whether examination is necessary; and**

> **(b)1. Without care or treatment, the person is likely to suffer from neglect or refuse to care for himself or herself; such neglect or refusal poses a real and present threat of substantial harm to his or her well-being; and it is not apparent that such harm may be avoided through the help of willing family members or friends or the provision of other services; or**
>
> **2. There is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or herself or others in the near future, as evidence by recent behavior.**

§ 394.463, Fla. Stat. (2002). These are the standards that govern the issue of whether plaintiff's detention and commitment in the case at bar were lawful. As Chief Judge Hinkle recently explained in a case similar to the one here:

> To be sure, the *Fourth Amendment* also applies to the seizure of a person for the purpose of such an examination. But at least in respects relevant to the case at bar, the Fourth Amendment neither adds to nor detracts from the Florida statutory standards. First the Fourth Amendment does not prohibit such a seizure based on probable cause to believe the criteria set forth in § 394.463(1) have been met. And conversely, the Fourth Amendment *does* prohibit such a seizure in Florida if there is not probable cause to believe these criteria have been met. This is so because Florida law recognizes no extra-statutory basis for such a seizure, and the Fourth Amendment prohibits a seizure absent probable cause to believe the governing substantive standards have been met. Thus, the Fourth Amendment was violated by plaintiff's seizure if and only if the statute was violated.

*Cochrane v. Harvey*, No. 4:04cv475/RH, 2005 WL 2176874 at *3 (N.D. Fla. Sept. 1, 2005) (footnote omitted, emphasis in original); *see also Villanova v. Abrams*, 972 F.2d 792, 795 (7th Cir. 1992) (The Fourth Amendment requires that an involuntary hospitalization "may be made . . . only if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard."); *Fisher v. Harden*, 398 F.3d 837, 842-43 (6th Cir. 2005) ([I]n the context of a mental health seizure an officer must have probable cause to believe that the person seized poses a danger to himself or others."); *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997) ("The Fourth Amendment requires an official seizing and detaining a person for a psychiatric evaluation to have probable cause to believe that the person is dangerous to himself or others."); *Glass v. Mayas*, 984 F.2d 55, 58 (2nd Cir. 1993) ("The Fourth Amendment requires an official to have probable cause to believe that

a person is dangerous to himself or others before he can seize and detain the person for a psychiatric evaluation.").

The facts set forth above as contained in Ranger Hughes' affidavit are undisputed.[5] Based on these facts, including information provided by witnesses as to plaintiff's behavior, as well as plaintiff's own statements to, and actions observed by, Ranger Hughes, an officer in Ranger Hughes' position reasonably could have believed that plaintiff had a mental illness, that she was unable to determine for herself whether an examination was necessary, and that there was a "substantial likelihood" that without care or treatment she would cause serious bodily harm to herself or others. Ranger Hughes had arguable probable cause to seize plaintiff for an involuntary mental examination. Thus, Ranger Hughes is protected from liability on plaintiff's Fourth Amendment claim by the doctrine of qualified immunity.

Plaintiff also alleges that her detention and involuntary examination violated her Fourteenth Amendment due process rights because there was no evidence she broke a law.[6] In other words, plaintiff asserts a substantive due process claim against Ranger Hughes based on the Rangers's application of § 394.463 to her. As previously discussed, the Supreme Court has held that a citizen can be confined through the civil commitment process if they appear to be mentally ill and dangerous, regardless of whether they have violated a criminal law. Florida's

---

[5]Plaintiff has not responded to defendant Hughes' motion for summary judgment. Her complaint does not raise a genuine dispute of material fact with respect to the issue of whether Park Ranger Hughes was entitled to seize plaintiff under the Baker Act. The only basis for plaintiff's claim that Park Ranger Hughes "wrongfully" detained her is that it was done "against the Plaintiff's will, without the Plaintiff breaking a law (and thus no evidence of a law being broken)." (Doc. 25, ¶ 34). Similarly, the only basis for plaintiff's claim that Park Ranger Hughes "wrongfully" removed plaintiff's pocketbook is that it was done "against the Plaintiff's will, . . . without the Plaintiff breaking a law (and thus no evidence of a law being broken)." (*Id.*, ¶ 36). These allegations add nothing to the arguable probable cause inquiry. As previously discussed, neither the Baker Act nor the Fourth Amendment requires evidence of criminal activity or the breaking of a law in order for an initial detention and involuntary examination to be authorized.

[6]Although plaintiff generally claims that Park Ranger Hughes detained, questioned, cuffed, transported and locked up plaintiff "without due process of law," and that the Deputy also removed plaintiff's pocketbook "without due process of law," plaintiff fails to specify in what way the legal procedures required for an involuntary examination were violated. (Doc. 25, ¶56). *See Burch v. Apalachee Community Mental Health Services, Inc.*, 840 F.2d 797 (11th Cir. 1988) ("In limited circumstances [such as those described in *Addington*] due process permits a period of involuntary commitment prior to a hearing as long as a hearing is held shortly after the initial detention.").

involuntary examination statute requires probable cause to believe the person is mentally ill and dangerous to herself or others.  Thus, the availability of qualified immunity again turns on whether Ranger Hughes' conduct was objectively reasonable.  Because the court has already concluded that he was objectively reasonable in finding plaintiff mentally ill and dangerous to herself in the Fourth Amendment context, it follows that Ranger Hughes was objectively reasonable in making the same determination in the due process context.  Therefore, Ranger Hughes is protected from liability for violating the Due Process Clause by the doctrine of qualified immunity.

Accordingly it is respectfully RECOMMENDED:

1.  That Defendant Park Ranger Hughes' motion for summary judgment (doc. 74), as supplemented (doc. 83) be GRANTED and that the clerk be directed to enter judgment in favor of this defendant and against the plaintiff.

2.  That the clerk be directed to close the file.

At Pensacola, Florida this 31st day of May, 2006.

/s/ *Miles Davis*
**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636;** *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).

*Case No: 3:04cv170/RV/MD*